:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved



## FOR SPECIAL DEPOSIT
## IN THE UNITED STATES FEDERAL DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **IN RE: THE COURT OF RECORD** | ) | Docket No.: 3:26-mc-93003 |
| **FOR THE AURON CAELUM STARK ESTATE** | ) | :WRIT-OF-PROHIBITION |
| | ) | ~:FOR THE JUDICIAL-ACTION- |
| | ) | CESSATION ~:WITH THE |
| | ) | JURISDICTION-ABSENCE-CLAIM |
| :FACT-AUTHOR-CLAIMANT | ) | ~:OF THE COURT-OF-RECORD- |
| :auron-caelum: stark©™ | ) | auron-caelum-stark |
| ~:Living-Soul-Creditor | ) | ~:WITH THE ARTICLE-THREE- |
| ~:Presiding-Justice-Designate | ) | SECTION-TWO-AUTHORITY |
| ~:Non-Assumpsit | ) | ~:FOR THE COMMON-LAW- |
| | ) | JURISDICTION-CLAIM ~:WITH |
| | ) | THE ECCLESIATICAL TRIBUNAL |
| | ) | STATUS |

## DEMAND FOR RECUSAL OF JUDGE MARK G. MASTROIANNI
## PURSUANT TO 28 U.S.C. § 455

Applicant :auron-caelum: stark©™ hereby moves for the immediate recusal and disqualification of the Honorable Mark G. Mastroianni from this action pursuant to 28 U.S.C. § 455, on the grounds that Judge Mastroianni has disqualifying conflicts of interest, financial interests in the subject matter of this controversy, serves as an officer of a named defendant, and has demonstrated actual bias requiring his removal from this case.

### I. STATUTORY REQUIREMENTS FOR DISQUALIFICATION

Title 28, United States Code, Section 455 establishes mandatory requirements for judicial disqualification:

"(a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."



:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

"(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding."

These requirements are not discretionary. The statute provides that a judge "shall disqualify himself" when the specified circumstances exist. The use of "shall" creates a mandatory duty. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 858 (1988).

Furthermore, disqualification is required not only when actual bias exists, but when "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test is objective: whether a reasonable person with knowledge of the facts would question the judge's impartiality. Liteky v. United States, 510 U.S. 540, 548 (1994). Recusal is required even for the appearance of impropriety. Liljeberg, 486 U.S. at 860.

## II. JUDGE MASTROIANNI HAS DISQUALIFYING FINANCIAL INTEREST

Judge Mastroianni has substantial and direct financial interests in the subject matter of this controversy and in the continued viability of the UNITED STATES, the named defendant.

A. Salary and Compensation. Judge Mastroianni receives an annual salary of $223,400 paid directly by the UNITED STATES Treasury. This salary is authorized by Congress and funded through appropriations from the UNITED STATES GOVERNMENT. His continued receipt of this substantial compensation depends entirely on the UNITED

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

STATES remaining solvent and continuing to fund the federal judiciary.

B. Pension Benefits. As an Article III federal judge appointed in 2014, Judge Mastroianni participates in the Federal Employees Retirement System (FERS) and will be entitled to a substantial federal pension upon retirement. This pension is paid by the UNITED STATES GOVERNMENT and constitutes a valuable property interest. The pension's value depends on the UNITED STATES remaining solvent and honoring its pension obligations. If the UNITED STATES were declared a fraudulent enterprise or its corporate structure were pierced as Applicant requests, Judge Mastroianni's pension rights could be jeopardized.

C. Health Insurance and Other Benefits. Judge Mastroianni receives health insurance, life insurance, and other fringe benefits provided by the UNITED STATES GOVERNMENT as his employer. These benefits have substantial monetary value and their continuation depends on the UNITED STATES continuing to operate and fund the federal judiciary.

D. Office, Staff, and Resources. Judge Mastroianni's courthouse chambers, law clerks, courtroom deputy, administrative staff, computer systems, law library, and all other resources necessary to perform his judicial functions are owned, maintained, and operated by the UNITED STATES GOVERNMENT. Without continued funding from the UNITED STATES, Judge Mastroianni would have no physical facilities, no staff support, and no ability to function as a judge.

E. Judicial Authority. Most fundamentally, Judge Mastroianni's entire authority as a federal judge derives from the UNITED STATES Constitution and federal statutes enacted by the UNITED STATES Congress. His judicial power exists only because the UNITED STATES exists as a governmental structure. If Applicant's claims were to prevail and the UNITED STATES were determined to be a fraudulent corporate entity operating without lawful authority, Judge Mastroianni's judicial power would be called into question.

F. Subject Matter of Controversy. This case directly challenges the lawfulness of the UNITED STATES debt system, the validity of UNITED STATES corporate structure, and the legitimacy of UNITED STATES governmental operations. The outcome of this case could substantially affect Judge Mastroianni's financial interests by:

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

(1) Determining whether the UNITED STATES must honor its debt obligations, which could affect the UNITED STATES' ability to pay judicial salaries and pensions;

(2) Determining whether the UNITED STATES operates as a criminal enterprise, which could affect the legitimacy and authority of all federal judges;

(3) Determining whether federal courts have jurisdiction over certain matters, which could affect the scope of Judge Mastroianni's judicial power;

(4) Determining whether the UNITED STATES declared insolvency affects ongoing litigation, which could affect the UNITED STATES' ability to fund court operations.

Under 28 U.S.C. § 455(b)(4), Judge Mastroianni is required to disqualify himself when "he knows that he... has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." All of the financial interests described above are known to Judge Mastroianni, are substantial, and could be affected by the outcome of this proceeding. Disqualification is therefore mandatory.

## III. JUDGE MASTROIANNI IS AN OFFICER OF A NAMED DEFENDANT

The caption of this action names as defendants "UNITED STATES OF AMERICA, a foreign corporation; and ALL SUBDIVISIONS, AGENCIES, DEPARTMENTS, AND CORPORATE ENTITIES operating under color of federal authority."

Judge Mastroianni is an Article III officer of the UNITED STATES GOVERNMENT. He took an oath of office prescribed by federal law (28 U.S.C. § 453) swearing to "support and defend the Constitution of the United States." He derives his authority from Article III of the UNITED STATES Constitution. He is appointed by the President of the UNITED STATES and confirmed by the UNITED STATES Senate. He is a member of the federal judiciary, which is expressly established as a branch of the UNITED STATES GOVERNMENT under Article III.

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

The federal judiciary—of which Judge Mastroianni is a component—is a subdivision, department, and entity operating under color of federal authority. It is therefore encompassed within the defendants named in this action.

28 U.S.C. § 455(b)(5)(iii) requires disqualification when the judge "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." As an officer and member of the defendant UNITED STATES GOVERNMENT, Judge Mastroianni has such an interest. He cannot sit in judgment of a case in which he himself is a component of the entity being sued.

This creates an impermissible structural conflict. It is black-letter law that a person cannot be a judge in his own case. In re Murchison, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness... to this end no man can be a judge in his own case"). Judge Mastroianni's position as an officer of the defendant entity makes him, in effect, a judge in his own case.

## IV. APPEARANCE OF PARTIALITY REQUIRES RECUSAL

Even if the Court were to find that the above-described conflicts do not absolutely require recusal under subsections (b)(4) and (b)(5), recusal is independently required under subsection (a) because "impartiality might reasonably be questioned."

A. Objective Reasonable Person Standard. The test is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." Liljeberg, 486 U.S. at 860. The emphasis is on appearance: "the goal is to avoid even the appearance of partiality." Id. at 865.

B. Reasonable Questioning of Impartiality. A reasonable person with knowledge of the facts would question Judge Mastroianni's impartiality in this case:

- He receives $223,400 per year from the defendant.

- He is entitled to a pension from the defendant.

5|10

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

- He receives health insurance and benefits from the defendant.

- His office, staff, and resources are provided by the defendant.

- His judicial authority derives from the defendant's constitutional structure.

- He is an Article III officer of the defendant.

- The case challenges the legitimacy and solvency of the defendant.

- A ruling in Applicant's favor could threaten the defendant's ability to pay the judge's salary and pension.

- The defendant was declared insolvent one day before the judge dismissed the case.

No reasonable person could believe that a judge can be impartial when ruling on a case against his own employer—particularly when that employer was just declared insolvent and the case challenges the lawfulness of the employer's operations.

C. Public Confidence in Judiciary. The appearance of impartiality is essential to public confidence in the judiciary. "Justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14 (1954). When a federal judge dismisses a case against the federal government—his own employer—without recusal, it creates the appearance that the judge is protecting his employer rather than impartially applying the law. This appearance undermines public confidence in the entire federal judicial system.

## V. ACTUAL BIAS DEMONSTRATED BY DISMISSAL

Judge Mastroianni's March 24, 2026 dismissal order itself demonstrates actual bias requiring recusal:

A. Mischaracterization of Filing. The dismissal order characterizes Applicant's submission as merely asking that "a certain 'Declaration of Trust' be deposited on the docket of this Court" and states that "Federal courts do not serve as a general repository for trust documents."

This grossly mischaracterizes Applicant's filing. Applicant did not simply request that trust documents be "deposited" as in a safe deposit box. Applicant filed a Praecipe

6|10

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

to the Clerk, a Declaration of Trust establishing ecclesiastical standing, a Notice of Claim against the UNITED STATES, constitutional challenges to federal authority, allegations of fraud and criminal enterprise, demands for specific judicial relief, and requests for declaratory judgment. This constitutes a justiciable case or controversy under Article III, not a mere document deposit.

The Court's deliberate mischaracterization suggests a predetermined intent to dismiss without addressing the substantive claims. This demonstrates bias.

B. Dismissal Without Consideration of Merits. The dismissal order does not address any of Applicant's substantive claims. It does not analyze whether the UNITED STATES operates as a criminal enterprise. It does not consider the March 23, 2026 insolvency declaration. It does not address the ecclesiastical immunity claims. It does not evaluate the UCC commercial remedies. It does not examine the conflict of interest issue.

Instead, the Court seized on a pretextual procedural ground—characterizing the filing as a mere trust deposit—to dismiss the entire action without reaching any merits. This suggests the Court was looking for any excuse to dispose of the case without ruling on the challenging constitutional questions presented. Such result-oriented decision-making demonstrates bias.

C. Suspicious Timing. The dismissal was entered on March 24, 2026—exactly one day after the UNITED STATES was declared insolvent on March 23, 2026. This timing raises serious questions:

- Did the Court rush to dismiss before the insolvency could be properly briefed?

- Did the Court dismiss to protect the insolvent defendant from creditor claims?

- Did the Court dismiss because the insolvency threatened its own funding and authority?

- Was the one-day gap coincidental or deliberate?

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

The proximity of the dismissal to the defendant's insolvency suggests the dismissal was motivated by judicial self-interest rather than legal analysis.

D. Sealing of Dismissal. The Court sealed the dismissal order, preventing public access. As argued in Applicant's Motion to Unseal, there is no legitimate basis for sealing a routine dismissal order. The only conceivable reason for sealing is to prevent public scrutiny of potential judicial impropriety.

The sealing demonstrates consciousness of wrongdoing. If the dismissal were legally sound and impartial, there would be no reason to hide it from the public. The sealing itself is evidence of bias.

## VI. PRECEDENT REQUIRING RECUSAL IN ANALOGOUS CIRCUMSTANCES

Courts have required recusal in circumstances involving far less substantial conflicts than those present here.

In Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), the Supreme Court held that recusal was required where a judge failed to disclose his membership on a university board that had an interest in litigation before him, even though the judge claimed he had forgotten about the board membership and had no actual bias. The Court emphasized that even inadvertent failures to recuse can undermine public confidence in the judiciary.

In United States v. Microsoft Corp., 253 F.3d 34 (D.C. Cir. 2001), the Court of Appeals disqualified a district judge who had made extrajudicial comments about the case to the media, finding that such comments created an appearance of bias even if no actual bias existed.

In In re Boston's Children First, 244 F.3d 164 (1st Cir. 2001), the First Circuit held that a bankruptcy judge should have recused himself where his law firm had represented one of the parties several years earlier, finding that even attenuated past relationships can create an appearance of partiality.

If judges must recuse for forgotten board memberships, media comments, and past law firm relationships, surely recusal is required when a judge's employer is the defendant, his salary comes from the defendant, his pension depends on the defendant,

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

and the case challenges the defendant's legitimacy and solvency.

## VII. FAILURE TO RECUSE RENDERS ALL ORDERS VOID

When a judge fails to recuse himself despite the existence of grounds requiring disqualification under § 455, all orders entered by that judge are void ab initio and must be vacated. Liljeberg, 486 U.S. at 862-63.

The dismissal order entered by Judge Mastroianni on March 24, 2026 is therefore void and must be vacated. Any subsequent orders entered by Judge Mastroianni in this action would likewise be void.

## VIII. ASSIGNMENT TO DIFFERENT JUDGE REQUIRED

Upon recusal, this case must be randomly reassigned to a different Article III judge. However, Applicant notes that the conflict of interest problem is structural and endemic: every Article III federal judge has the same conflict of interest because every Article III judge is employed by, compensated by, and derives authority from the UNITED STATES GOVERNMENT, the defendant in this action.

This structural problem highlights the importance of Applicant's ecclesiastical remedies and Applicant's invocation of a Court of Record operating outside the Article III system. Applicant submits, however, that the conflict is somewhat less acute for a judge who did not personally enter the dismissal order and seal it to hide potential impropriety. A different judge approaching the case fresh would at least not have the appearance of covering up his own prior misconduct.

## IX. RELIEF REQUIRED

WHEREFORE, Applicant respectfully requests that this Honorable Court:

1. RECUSE Judge Mark G. Mastroianni from any further participation in this action pursuant to 28 U.S.C. § 455;

2. VACATE the March 24, 2026 dismissal order as void ab initio due to the presiding judge's disqualifying conflicts of interest;

3. RANDOMLY REASSIGN this case to a different Article III judge who was not

9|10

:FACT-AUTHOR-CLAIMANT: :auron-caelum: stark©™
~:Living-Soul-Creditor
~:Presiding-Justice-Court-of-Record
~:Non-Assumpsit
~:All-Rights-Reserved

involved in the prior dismissal;

4. UNSEAL all proceedings and make all future proceedings public;

5. GRANT Applicant opportunity to amend his filings and proceed on the merits;

6. GRANT such other and further relief as justice and equity require.

:EXECUTED-FACT-CLAIM:
:Twentieth-Day of the March of the Year 2026

:AUTOGRAPH-TRUTH-SEAL: :auron-caelum stark

:auron-caelum: stark©™

:FACT-CAPACITY-CLAIMS:
:Living-Soul
:Natural-Person
:Sui-Juris-Status
:Fiduciary-Executor :of: AURON-CAELUM-STARK-ESTATE©™
:Executor-Beneficiary :of: HEKATE-LIVING-TEMPLE-TRUST©™
:Supreme-Justice-Judge :of: :Court-of-Record
:Creditor-in-Fact
:Non-Assumpsit
:RIGHTS-RESERVATION-CLAIMS:
:All-Rights-Reserved
:UCC: 1-308
:Without-Prejudice
:UCC: 1-103
:Common-Law-Preserved
:Natural-Law-Sovereign
:Ecclesiastical-Immunity-Active

By _____
Living Witness

By _____
Living Witness

Andrew HC Christton 3/20 Jacquelyn Marie Sykes 3/20/26
Name        Date        Name        Date

10|10